**UNITED AIRLINES, INC., Plaintiff,**

v.

**ALG, INC. d/b/a Aviation Leasing,
Group, Inc. and Tajik Air
Limited, Defendants.**

No. 94 C 3619.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 18, 1995.

Christina M. Tchen, Miriam Goldman Bahcall, Esther N. Iwerebon, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for United Airlines, Inc.

John Scott Myers, Richard Thomas Mitchell, O'Connor, Schiff & Myers, Chicago, IL, Howard D. Lay, Kansas City, MO, for ALG Inc., ALG Trust.

Jerome Wiener, Kerri Linn McBride, Schain, Firsel & Burney, Ltd., Chicago, IL, for Tajik Air Ltd.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff United Air Lines ("UAL") brings this twelve count complaint against Aviation Leasing Group, Inc. ("ALG") and Tajik Air Limited ("TAL") for breach of a lease and a guarantee agreement. ALG has filed cross-claims against TAL, Tajik Air, the Airline of the Republic of Tajikistan ("Tajik Air"), and the Republic of Tajikistan for breach of contract, unjust enrichment and indemnification.[1] TAL has moved to dismiss Counts VI–X of UAL's complaint and all counts of ALG's cross-claim against it. For the reasons stated below, TAL's motions are denied.

### I. Background

The facts surrounding this litigation have already been discussed in our previous opinion, so we reiterate here only those details

---

1. ALG includes ALG Trust as a third-party plaintiff in its claims against TAL, Tajik Air and the Republic of Tajikistan. However, ALG Trust is not a party to this case. *See United Airlines v.* *ALG, Inc.,* No. 94 C 3619, 1994 WL 583324 (N.D.Ill. October 22, 1994). Consequently, only cross-claims asserted by ALG are considered in this opinion.

necessary for resolution of the instant motions.

ALG alleges that beginning in September 1993, it was involved in negotiations with TAL, Tajik Air and the Republic of Tajikistan over the lease of a commercial aircraft. These negotiations resulted in a letter of October 14, 1993, wherein the Republic of Tajikistan agreed to guarantee Tajik Air's performance on any lease to be entered into by the airline and ALG. Moreover, the Republic of Tajikistan assented to ALG's assignment of the guarantee to another party. On October 15, 1993, ALG sent a proposal to Tajik Air for the lease of a Boeing 747 aircraft by Tajik Air and TAL. This eight-page document identified Tajik Air and TAL as lessees, and contained the following provision:

> In addition to the above, Lessee, Tajik Air, the airline of the Republic of Tajikistan and Tajik Air Limited, a U.K. Company have also provide[d] ALG as Security for Lessee's performance under the Lease an unconditional Government Guarantee and company Guarantee that have been issued by the Government of the Republic of Tajikistan and Tajik Air Limited. The above Guarantees have been accepted by [ALG].

The final page of this document contained an acceptance and acknowledgement of the "general terms and conditions" of the proposal, signed by Michael Wynne–Parker on behalf of TAL, as well as by representatives of Tajik Air and the Republic of Tajikistan.

On November 1, 1993, plaintiff UAL entered into a lease agreement ("Lease") with ALG 747–SP–21 Trust ("ALG Trust")—a Delaware trust formed by ALG solely for the purpose of effectuating the aircraft deal with defendants—for the use of one Boeing 747 aircraft. On November 30, 1993, ALG Trust and Tajik Air entered into an Operating Lease Agreement ("Sublease") whereby Tajik Air agreed to sublease the aircraft from ALG Trust. UAL alleges that with the full knowledge and consent of TAL, ALG Trust subsequently assigned to UAL all of its rights under the Sublease and the October 15, 1993 guarantee ("Sublease Assignment").

UAL also alleges that in early 1994, ALG Trust, ALG, Tajik Air, TAL and the Republic of Tajikistan all failed to make the required lease payments on the aircraft, and that UAL was forced to repair and retrieve the aircraft from the United Kingdom. Seeking to recover its alleged losses, UAL has filed this lawsuit against ALG and TAL. ALG has denied liability to UAL and also filed cross-claims against Tajik Air, TAL and the Republic of Tajikistan.

## II. Discussion

TAL now moves to dismiss Counts VI–X of UAL's complaint and ALG's cross-claims, asserting the same deficiencies with both pleadings. First, TAL contends that since it was not a party to the Lease, the Sublease or any written Sublease Assignment, neither UAL nor ALG can state a claim against it upon which relief can be granted. Second, TAL asserts that it is not subject to personal jurisdiction in Illinois. Therefore, TAL argues that both UAL's complaint and ALG's cross-claim should be dismissed under Rules 12(b)(6) and 12(b)(2).

### A. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). At this stage in the litigation, we accept the well-pleaded allegations of the complaint as true and construe all reasonable inferences in favor of the non-movant. *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989).

TAL argues that because it was not a party to the Lease, the Sublease or the Sublease Assignment, neither UAL nor ALG may base its claims upon these contracts. Consequently, TAL urges us to dismiss Counts VI–X of UAL's complaint and all of ALG's cross-claims. *See Goodman v. Board of Trustees of Community College Dist. 524,* 498 F.Supp. 1329, 1337 (N.D.Ill.1980) ("Where, however, the plaintiff's cause of action arises out of a contract which has been attached to the complaint as an exhibit, and where such contract shows unambiguously on

its fact that the relief prayed for is not merited, dismissal is both justified and appropriate."). We disagree.

■ UAL's claims against TAL hinge on two sources: (1) the written proposal and acceptance dated October 15, 1993 between TAL, Tajik Air, the Republic of Tajikistan and ALG, and (2) the Sublease between ALG Trust and Tajik Air. With regard to the Sublease, it is true that TAL is mentioned as a "Guarantor" in that document. However, TAL is not listed as a party to the agreement, and thus at first glance it would appear that the company cannot be bound by the terms of the Sublease.[2] UAL counters that the Sublease recognizes and incorporates the "Guarantees dated October 14, 1993 from [TAL and the Republic of Tajikistan] to the beneficiaries named therein as the same may be amended, modified or supplemented from time to time in accordance with the applicable provisions thereof." Sublease, Appendix, at 8. Therefore, UAL argues, TAL's liability stems from both the Sublease and the separate guarantee agreements executed in October 1993. Because the vitality of UAL's claims against TAL depend upon the guarantee agreements reached in October 1993, it is to those documents that we now turn.

The October 15, 1993 agreement specifically stated that TAL and the Republic of Tajikistan unconditionally guaranteed performance of the Sublease by Tajik Air and TAL. Indeed, TAL was listed as a lessee of the aircraft in that document. Most importantly, Michael Wynne–Parker signed the agreement as a representative of TAL, thereby indicating his company's acknowledgement and acceptance of it. UAL contends that because the Sublease Assignment gives it any rights ALG may have had against TAL, it is entitled to bring suit against TAL for failure to honor its guarantee of the Sublease. TAL's only reply is that the October 15, 1993 letter was actually a "proposal" and

does not bind TAL to anything. However, the signature of TAL's employee Wynne–Parker belies its contention that the October 15 letter was merely a proposal; indeed, the subsequently entered Lease and Sublease specifically mentioning the guarantee by TAL suggests that this "proposal" was accepted by the parties. Moreover, UAL alleges that Wynne–Parker signed the Sublease Assignment on behalf of Tajik Air and TAL, further supporting its assertion that TAL was aware of and acquiesced in the agreement. Reading all of these facts with all reasonable inferences in favor of UAL, we cannot conclude that UAL will be unable to prove that it is entitled to relief. Accordingly, TAL's motion to dismiss Counts VI–X of UAL's amended complaint is denied.

■ Similarly, TAL's motion to dismiss ALG's cross-claims must also be rejected. Under the October 15, 1993 guarantee agreement, TAL specifically warranted that a "company Guarantee [has] been issued by ... Tajik Air Limited. The above Guarantees have been accepted by [ALG]." Under ALG's reading of the facts, the Sublease recognized the existence of these guarantees and incorporated them into the document itself. ALG bases its cross-claims primarily on these documents, and we are unable to conclude that they cannot provide the basis for a cause of action. Therefore, TAL's motion to dismiss ALG's cross-claims must be denied.

### B. Rule 12(b)(2) [3]

■ The party relying on an assertion of personal jurisdiction bears the burden of proving that such an assertion is proper, although at this stage only a prima facie showing need be made. *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). Personal jurisdiction in federal district court is gener-

---

2. UAL alleges that Michael Wynne–Parker signed the Sublease for Tajik Air, and implies that this acknowledgement obligates TAL to the terms of that document. Because we agree with UAL's main argument, however, we need not decide what effect Wynne–Parker's signature on the Sublease has for TAL.

3. Because TAL's arguments as to jurisdiction apply equally to all claims asserted in this litigation, we will consider TAL's 12(b)(2) motions against UAL and ALG together.

ally measured according to both the state law as well as the constraints of the due process clause of the Fourteenth Amendment. *See Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir.1990). However, where a contract underlying a litigation contains a forum selection clause, both parties will be deemed to have waived any objection to personal jurisdiction. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 9–12, 92 S.Ct. 1907, 1912–14, 32 L.Ed.2d 513 (1972); *Northwestern Nat. Ins. Co. v. Donovan,* 916 F.2d 372, 375 (7th Cir.1990) ("[S]ince a defendant is deemed to waive (that is, he forfeits) objections to personal jurisdiction or venue simply by not making them in timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause.").

 UAL contends that TAL agreed to litigate any disputes arising out of the Sublease in the state or federal courts of Illinois. In support UAL cites (1) a portion of the Sublease which states that the law of Illinois will control any disputes arising out of the agreement, and (2) another portion of the Sublease which contains the following provision:

> Each of the [Sublessee] and [Sublessor] (the same being made for the express benefit of [UAL]) (a) hereby irrevocably submits itself to the non-exclusive jurisdiction of the Circuit Court of the State of Illinois, Cook County and of the United States District Court for the Northern District of Illinois, for the purposes of any suit, action or other proceeding arising out of this Lease or the subject matter hereof or any of the transactions contemplated hereby. . . .

Amended Complaint, Exb. C, at 52. There is obviously one glaring problem with UAL's argument: TAL did not sign the Sublease.[4] And although the Sublease refers to TAL as a guarantor, it does not indicate that the guarantors have consented to the jurisdiction of the federal and state courts in Illinois.

UAL seeks to overcome this hurdle by pointing to TAL's acknowledgement and approval of the October 15, 1993 letter, wherein TAL warranted that it had guaranteed Tajik Air's performance under the Sublease. According to UAL, TAL's promise to perform the obligations of Tajik Air also obligates TAL to litigate disputes under the Sublease in the forum designated by that document. In support, UAL cites *Ameritrust Co. Nat. Ass'n v. Chanslor,* 803 F.Supp. 893, 895–96 (S.D.N.Y.1992) (Sweet, J.), wherein a trustee challenged the assertion of personal jurisdiction over him because the guarantee agreement he signed did not contain a forum selection clause. The promissory note underlying the litigation had been signed by the trust, and had obligated the trust to resolve any disputes in New York. The district court held that because the trustee had promised to guarantee "the full payment, performance, and observation . . . of all agreements" executed by the trust, the trustee had assumed the trust's obligation to litigate in New York, thereby waiving any objection to personal jurisdiction. *Id.* Similarly, in *Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456, 460–61 (E.D.N.Y.1986), the court held that a guarantor who had agreed to assume every obligation under the contract in dispute necessarily agreed to abide by the consent to jurisdiction clause contained in the agreement, despite the absence of a forum selection clause in the guarantee.

We conclude that UAL has properly alleged that TAL's unconditional guarantee of Tajik Air's performance under the Sublease obligated it to abide by all of the terms of the Sublease, including the commitment to adjudicate any disputes arising out of it in Illinois. Although the guarantee agreement was entered into before the Sublease, it clearly contemplated the later agreement since it refers to ALG as the lessor, identifies the exact aircraft to be leased, and specifies various terms of delivery and payment. Given the unconditional nature of the guarantee, and TAL's knowledge of the subsequent Sub-

---

**4.** Exhibit D of the Sublease contains a copy of a guarantee which apparently was to be signed by TAL and the Republic of Tajikistan. This agreement specifically provided for a waiver of jurisdictional objections. However, no signatures ap-

pear on the document, and neither UAL nor ALG allege that those parties acknowledged the document. Thus, we will assume that this document was never executed.

lease, we find that TAL has waived objections to personal jurisdiction.

■ Additionally, TAL's conduct of guaranteeing an obligation that incorporated Illinois law and contained a forum selection clause also exposes it to the jurisdiction of this court. Since 1989, Illinois law permits the exercise of jurisdiction on any basis permitted by both the Illinois Constitution and the federal Constitution. 735 ILCS 5/2–209(c); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992). Under the present interpretation of the due process clause of the Fourteenth Amendment, in order to obtain jurisdiction over a defendant the person in question must (1) "have certain minimum contacts" with Illinois (2) "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In other words, TAL's guarantee of the obligation that specifically invoked Illinois law and would be litigated in the courts of Illinois must constitute sufficient contacts to justify an assertion of jurisdiction.

In a case similar to the one at bar, the Ninth Circuit found that a defendant who had guaranteed the obligations of a party to sale-lease contract could be subject to jurisdiction in California, since the underlying contract was expressly subject to California law as well as interpretation by California courts. *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Despite the fact that the guarantee agreement did not contain a forum selection clause and the defendant was not a party to the underlying obligation, the court found that the guarantor

"interjected himself into the transaction by assuming personal liability in the event of default on a contract expressly subject to jurisdiction in the California forum." *Id.* Similarly, TAL has "interjected" itself into the Sublease between ALG and Tajik Air, and thereby established sufficient contacts to justify an assertion of jurisdiction.[5] *Cf. Continental Bank, N.A. v. Everett*, 964 F.2d 701, 703 (7th Cir.) (signing guarantee delivered and executed in Illinois and subject to Illinois law constituted sufficient contact to justify exercising personal jurisdiction), *cert. denied*, —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992).

■ The second part of the federal due process analysis requires that an assertion of jurisdiction not be unreasonable or unduly prejudicial—i.e., that it comport with traditional notions of fair play and substantial justice. In measuring the fairness of an exercise of jurisdiction, courts consider an number of factors including "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies....'" *Dehmlow*, 963 F.2d at 945 (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987)). In this case, forcing TAL to litigate this case in Illinois is neither unreasonable nor unduly prejudicial. Although TAL is a foreign corporation, it has not demonstrated that it would face any real burden in being forced to litigate this contract dispute in Illinois. Illinois has an interest in adjudicating this dispute, since its law was explicitly invoked in the Sublease and one of its citizens claims to have been injured by a breach of this agreement. UAL has an interest in obtaining

---

5. Further, we observe that TAL appears to have a financial stake in Tajik Air, and as the airline's managing agent it stood to benefit from the Sublease. Courts have held that where a party guarantees the obligations of an entity in which it has an economic interest, and where the nature of these obligations are known to the guarantor, due process will not be offended by an assertion of jurisdiction in the state where litigation involving the underlying obligation is conducted. *See, e.g., Marathon Metallic Bldg. Co. v. Mountain* *Empire Const. Co.*, 653 F.2d 921, 923 (5th Cir. 1981) (corporate officer and shareholder subject to jurisdiction on underlying debt of corporation that he guaranteed); *Koff v. Brighton Pharmaceutical, Inc.*, 709 F.Supp. 520, 526 (D.N.J.1988) (jurisdiction may be based on guarantee where guarantor possesses financial interest in obligor); *cf. National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir.1982) (guarantors with economic interest in primary obligor subject to jurisdiction in obligor's home state).

relief in a single forum, since piecemeal litigation involving so many parties could lead to inconsistent results and incomplete recovery. Moreover, the several States have an interest in reaping the efficiencies which would stem from a single proceeding.

 Finally, in order for an assertion of jurisdiction to satisfy the requirements of the Illinois constitution, it must be "fair, just and reasonable to require a non-resident defendant to defend an action, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990). Given our discussion above, requiring TAL to litigate in Illinois the construction of the Sublease which it guaranteed is fair, just and reasonable.

In sum, we find that TAL has waived any objections to jurisdiction in Illinois. In addition, we find that subjecting TAL to jurisdiction in this court would not offend traditional notions of fair play and substantial justice, and would be permissible under Illinois law. Accordingly, defendant's motions are denied.

### III. Conclusion

For the reasons set forth above, defendant TAL's motions to dismiss Counts VI–X of UAL's complaint and all counts of ALG's cross-claims are denied. It is so ordered.